

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00103-CR

Brandon **POWERS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 452nd District Court, Kimble County, Texas
Trial Court No. 2016-DCR-0621
Honorable Robert R. Hofmann, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
             Marialyn Barnard, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed:  December 13, 2017

AFFIRMED AS MODIFIED

Brandon Powers appeals his conviction for cruelty to animals. He argues legally insufficient evidence supports his conviction, he was egregiously harmed by charge error, and insufficient evidence supports the judgment for attorney's fees. We modify the judgment to delete the assessment of attorney's fees and affirm the judgment as modified.

### BACKGROUND

The Junction Police Department dispatched an officer one evening to respond to a reported domestic disturbance. When the officer arrived at the scene, Josette McAnelly reported Powers

had killed her puppy by repeatedly slamming the puppy's head against a door jamb. Powers was thereafter indicted for cruelty to animals, and the case proceeded to a jury trial. The jury found Powers guilty and assessed punishment at a fine of $5,000 and two years' confinement in state jail. The judgment of conviction also assesses attorney's fees against Powers. After the trial court imposed the sentence, Powers filed a timely notice of appeal.

## LEGAL SUFFICIENCY

Powers argues legally insufficient evidence supports his conviction due to a material variance between the indictment and the evidence admitted at trial. The Due Process Clause protects a person from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. U.S. CONST. amend. XIV; *accord Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). In reviewing the legal sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We review the evidence "in the light most favorable to the verdict." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof offered at trial. *Byrd*, 336 S.W.3d at 246. A variance is immaterial if it does not prejudice the defendant's substantial rights, particularly his rights against double jeopardy and to sufficient notice of the charged offense. *Id.* at 247-48.

Powers argues that although the indictment alleged he killed a puppy in a cruel manner by repeatedly slamming the puppy against a "wall," the evidence showed he slammed the puppy's head against a "door jamb." Bobby Buscha, the Junction Police Department officer who responded to the domestic disturbance, testified that by "door jamb," he was referring to both "the wall of the trailer and the door of the trailer." The trial court admitted a photograph showing the door jamb is

affixed to and part of the wall. There is no discrepancy between the allegations in the charging instrument and the proof offered at trial. We hold legally sufficient evidence supports Powers's conviction for the charged offense. *See id.*

<h3 style="text-align:center">CHARGE ERROR</h3>

Powers argues the charge erroneously (1) omitted a definition of "recklessness"; and (2) included a definition of "torture," references to causing "serious bodily injury to an animal," and both the conduct-oriented and the result-oriented components of the definitions of the mental states of "intentional" and "knowing." Acknowledging he did not object to the charge at trial, Powers argues these purported charge errors caused him to suffer egregious harm.

When a defendant fails to object to the jury charge at trial, we will affirm the trial court's judgment unless we determine the charge error caused the appellant to suffer egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The egregious harm standard is difficult to meet. *State v. Ambrose*, 457 S.W.3d 154, 160 (Tex. App.—San Antonio 2015), *aff'd*, 487 S.W.3d 587 (Tex. Crim. App. 2016). Egregious harm "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* In assessing the harm caused by failing to properly instruct the jury, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

## A. The Entire Jury Charge

The jury charge given in this case began by explaining Powers was charged by indictment "with the offense of cruelty to non-livestock animal, alleged to have been committed on or about May 21, 2016, in Kimble County, Texas," to which Powers pled not guilty. In the abstract paragraphs, the charge generally explained a person commits the offense of cruelty to animals by

"intentionally or knowingly tortur[ing] an animal or in a cruel manner kill[ing] or caus[ing] serious bodily injury to an animal." The charge defined "animal" and "torture," and provided the definitions of "intentional" and "knowing":

> A person acts intentionally, or with intent, with respect to the nature of his conduct or a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The charge then included the application paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that on or about May 21, 2016, in Kimble County, Texas, the defendant, Brandon Powers, did then and there intentionally, knowingly, or recklessly in a cruel manner kill an animal, to wit: a puppy, by repeatedly slamming the puppy against the wall, and the defendant's conduct was not a generally accepted and otherwise lawful form of conduct occurring solely for the purpose of or in support of fishing hunting or trapping; or wildlife management, wildlife or depredation control, or shooting preserve practices as regulated by state and federal law; or animal husbandry or agriculture practice involving livestock animals, then you will find the defendant guilty of the offense of cruelty to animals as charged in the indictment.

The application paragraph also instructed the jury to acquit Powers if it had "reasonable doubt thereof." The jury charge did not define when a person acts "recklessly." The jury was further instructed on the presumption of innocence, Powers's right not to testify, the State's burden of proof, the jury's role as the factfinder, proper and improper communications, unanimity, and selecting a foreperson.

**B. State of the Evidence**

Three witnesses testified for the State. Officer Buscha testified that on May 21, 2016, he received a call reporting a domestic disturbance. He stated that upon arriving at the scene, Roger Rainey, a man who was sleeping in McAnelly's RV that night, told him Powers had killed a puppy and pointed in the direction Powers had fled. Buscha testified:

[A]bout that time Ms. McAnelly comes from the trailer and approaches us and -- and she is very upset. She's screaming. She's crying. She has a puppy in her arms, and she comes over there to me and she said that -- that Brandon Powers slammed the puppy's head in the door and killed it.

He further testified he could see "the puppy's head was just flopping over like as if, you know, there was nothing left in the neck area," and it appeared as though the puppy's neck was broken.

Buscha then relayed McAnelly had told him Powers was spending the night in her RV, the RV was cramped, and when she went to use the restroom, she crawled over him to get to the restroom because he would not move. Buscha testified McAnelly stated that "when she came back out of the restroom [Powers] had her puppy and was physically slamming the door -- slamming the puppy's head between the door and the door jamb she said numerous times."

During Buscha's testimony, the trial court admitted a photograph of the door jamb in McAnelly's trailer, a photograph of the puppy lying on its side, and a video-recording from Buscha's body camera. The video-recording is generally consistent with Buscha's testimony. During cross-examination, Buscha testified he did not see Powers at the scene, lacked personal knowledge as to whether the puppy was alive before he arrived, did not take the puppy to a vet to determine the cause of death, and did not see any indication of blood or hair on the door jamb. The video-recording does not show the puppy bleeding or suffering from any blood loss.

McAnelly testified she is "very close" with Powers and she "love[s] [him] like [her] brother." She explained Powers showed up to her RV, but "[h]e was not himself."[1] She testified Powers became upset when she tried to get by him to go to the restroom, she asked Powers to leave, and "he slammed the door on [her] puppy's neck . . . picked it up and put it back in the door and slammed it three more times and became angry." McAnelly stated Powers "was very angry,

---

[1] On the video-recording, McAnelly stated Powers was her cousin and he had been drinking.

very agitated that [she] asked him to leave." She stated the puppy was alive before Powers came over, and the puppy was dead after Powers left.

Rainey, who was sleeping in the RV that night, testified he was in bed and heard McAnelly and Powers arguing "because [Powers's] legs were in the way" and Powers "went to the door and smashed the puppy in the door and said -- said, there. Here is your puppy. And started to walk off and he smashed it in the door three times." Rainey testified the puppy was "very alive" before Powers started smashing it in the door.

## C. Argument of Counsel & Other Relevant Information

During its opening statement, the State explained Powers was staying with McAnelly, became upset, took her puppy, and "began slamming the puppy against the wall, the door jamb and also using the door and closing it and basically torturing and killing the puppy." The State referred to evidence the jury would hear that would show "the puppy is deceased." Powers's trial counsel told the jury during opening statements the evidence would not show Powers was anywhere near the scene. Discussing the likely emotional impact of the evidence, trial counsel also stated, "I think it's going to be really tough because there's going to be an image behind you and maybe burned into your mind for a while of a dead dog, and not just any dead dog, but a really cute little puppy."

During closing arguments, the State reiterated the general instructions in the jury charge. The State explained, "[T]he fact is there was a puppy that Josette McAnelly had. The puppy was slammed against the wall, okay, of this travel trailer and the puppy is now dead. All right. Those are the facts that I want you to focus on." The State further argued, "I want you to focus on what the law is in those facts and apply those things to the Charge in this case." Powers's trial counsel directed the jury's attention to the application paragraph and told the jury, "That's what the State has to prove." Trial counsel emphasized Powers was presumed innocent, he had a right not to

testify, and the jury should not let the emotional impact of the photo or video-recording unduly influence them. Trial counsel further argued Buscha was not present for the incident, noted there was no blood or hair on the door frame, and dedicated nearly half of the closing argument to distinguishing the door jamb from the wall. In rebuttal, the State criticized the defense for "[g]etting real technical," and argued the door jamb is part of the wall. Both sides briefly mentioned the mental states contained in the charge, but neither side reiterated the definitions or explained to the jury the nuances between the various mental states referred to in the application paragraph.

The entire trial—including a pretrial hearing, jury selection, the guilt–innocence phase, and the punishment phase—lasted one day. The record shows the trial court signed the written jury charge on guilt–innocence at 3:51 p.m., and the jury's guilty verdict form signed by the foreman was filed with the trial court clerk at 4:45 p.m. that same day.

**D. Analysis**

Even if the complained-of omissions and inclusions in the jury charge were erroneous, Powers was not egregiously harmed. Although the charge's abstract paragraphs contained a definition of "torture" and references to causing "serious bodily injury to an animal" (two means of committing cruelty to animals the indictment did not allege), the application paragraph instructed the jury to convict Powers only if it found he "intentionally, knowingly, or recklessly in a cruel manner kill[ed] an animal, to wit: a puppy, by repeatedly slamming the puppy against the wall," which tracks the indictment verbatim. *See O'Brien v. State*, 482 S.W.3d 593, 611, 613 (Tex. App.—Houston [1st Dist.] 2015, pet. granted on other grounds) (concluding charge error was not egregiously harmful when, among other factors, the erroneous "portion of the abstract was not incorporated into the charge's application paragraph" and "[t]he application paragraph accurately tracked the indictment"). The application paragraph further instructed the jury to find Powers not guilty if it had reasonable doubt about the allegation "as charged in the indictment," which had

been read to the jury. We presume the jury followed these instructions. *See Sanders v. State*, 448 S.W.3d 546, 549 (Tex. App.—San Antonio 2014, no pet.).

While Powers complains the charge erroneously included the definition of "torture" and references to "causing serious bodily injury to an animal," the application paragraph did not refer back to these terms or authorize the jury to convict Powers for simply torturing or causing serious bodily injury to an animal. All three of the witnesses testified the puppy was dead, and on the video-recording, which shows the puppy's state for several minutes, the puppy was not moving (on its own), its body was entirely limp, and when the puppy was lying on its side in the RV, its eyes were open. McAnelly and Rainey testified the puppy was alive before Powers arrived that night, but dead after Powers handled it. During opening statements, Powers's trial counsel emphasized the puppy was dead and that the images of the dead puppy would be "burned into" the jurors' minds "for a while." Trial counsel also assumed during opening statements, cross-examination of witnesses, and closing argument that the puppy was dead. The State, although stating at one point that Powers had "tortured" the puppy by slamming it against the wall, did not argue the jury could convict Powers based on torture or causing serious bodily injury alone. It is also unlikely the jury believed the puppy was still alive, and thus convicted Powers for torturing or causing serious bodily injury alone.

Powers complains the charge's definitions of "intentional" and "knowing" erroneously include both conduct-oriented and result-oriented components. He argues that cruelty to animals is only a conduct-oriented offense. He also argues the charge should have defined "recklessly." The application paragraph instructed the jury to find Powers guilty if it found he "intentionally, knowingly, or recklessly in a cruel manner kill[ed] an animal, to wit: a puppy, by repeatedly slamming the puppy against the wall." According to Powers, the jury charge should have limited the jury's consideration to whether he intended his conduct of acting "in a cruel manner."

The State argued Powers's conduct was intentional and did not argue Powers intended to kill the puppy. The State did not emphasize the "reckless" mental state or argue that Powers was merely acting recklessly. The testimony of all three witnesses at trial, as well as McAnelly's statements on the video-recording, supported the State's argument that Powers's conduct was intentional, rather than merely reckless. The evidence at trial did not support any theory of the case other than that Powers intentionally or knowingly in a cruel manner killed a puppy.

There were no significant points of impeachment of any of the witnesses with regard to the puppy being dead, Powers's conduct, or Powers's mental state with regard to his conduct. Powers's defense was not consistent or persuasive; Powers appeared initially to primarily dispute he was the perpetrator of the offense, but by his closing argument, he primarily focused on attempting to distinguish the door jamb and the wall. The evidence was legally sufficient to support Powers's conviction, and the brevity of the jury's deliberation further shows this was not a close case. On this record, we cannot say the purported charge errors caused Powers to suffer egregious harm. *See Almanza*, 686 S.W.2d at 171; *Ambrose*, 457 S.W.3d at 160; *see also Matus v. State*, No. 10-08-00149-CR, 2011 WL 1166383, at *8 (Tex. App.—Waco Mar. 30, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding charge error regarding mental states was not egregiously harmful because, among other reasons, the evidence was legally sufficient and the State's evidence and argument did not focus on the incorrect aspects of the charge's mental-state definitions).

### ATTORNEY'S FEES

Powers argues the evidence is insufficient to support the assessment of attorney's fees because his presumed indigence was never rebutted. In its brief, the State agrees, acknowledging Powers "is entitled to have the judgment reformed." The record shows the trial court determined Powers was indigent, and did not make a finding that Powers was able to repay any amount of the

costs of court-appointed legal counsel. In such circumstances, the proper remedy is to delete the assessment of attorney's fees from the judgment. *See Cates v. State*, 402 S.W.3d 250, 251-52 (Tex. Crim. App. 2013).

## CONCLUSION

We modify the judgment to delete the assessment of attorney's fees and affirm the judgment as modified. *See id.*; *see also* TEX. R. APP. P. 43.2(b) (permitting our judgment on appeal to modify the trial court's judgment and affirm the judgment as modified).

Luz Elena D. Chapa, Justice

DO NOT PUBLISH