**AFFIRMED and Opinion Filed April 26, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00463-CR**

**GERALD JEFFERSON MUNOZ MONTANO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F18-00457-Y**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Garcia

A jury convicted appellant of engaging in organized criminal activity by committing murder and assessed punishment at sixty-five years in prison. In two issues, appellant argues that the trial court gave the jury an erroneous accomplice witness instruction and the evidence is insufficient to support his conviction. Finding no reversible error, we affirm the trial court's judgment.

## I. BACKGROUND

Appellant and other members of the 18th Street gang shot and killed Nahum Villatoro because he covered up a gang tattoo on his hand. Villatoro's body was discovered near his car on the side of the road. The car was still running, the lights

were on, the windows rolled down, and there was blood on it and all around it. Two fired cartridge cases and three unfired rounds were discovered on the ground near Villatoro's body.

Appellant was charged with engaging in criminal activity by committing murder, pleaded not guilty, and testified on his own behalf at trial. He admitted that he was an 18th Street gang member in El Salvador, but claimed he was no longer a member after he came to the United States. He denied any part in the murder.

The State's trial evidence included testimony from an accomplice, Franklin Villalobos. Villalobos told the jury he saw appellant shoot Villatoro several times.

The jury found appellant guilty of the charged offense and assessed punishment at sixty-five years in prison. The trial court entered judgment accordingly. Appellant timely appeals from that judgment.

## II. ANALYSIS

### A. Accomplice Witness Instruction

Franklin Villalobos drove the car transporting appellant and other gang members to the place where Villatoro was killed and was present when appellant shot him. En route to the scene, Villalobos was told that the gang intended to kill Villatoro. Once there, he saw one of the gang members shoot Villatoro "through the neck." As Villatoro begin to run, appellant pulled out an Uzi and shot him multiple times. After the killing, everyone piled in Villalobos's car and they left the scene. Villalobos then learned that Villatoro was killed because he covered up a gang tattoo.

The court's charge asked the jury to determine whether Villalobos was an accomplice. Further, the charge instructed that if Villalobos was found to be an accomplice, his testimony had to be corroborated.

An accomplice is someone who, under the evidence, could have been charged with the same or a lesser-included offense as that with which the defendant was charged. *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013). In other words, an accomplice is an individual who participates with a defendant before, during, or after the commission of the crime, acts with the requisite culpable mental state, and performs an affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* (citing *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006)). If the issue is raised by the evidence, the jury must be instructed accordingly because the accomplice-witness rule is law applicable to the case. *Id.* at 513.

There are two possible accomplice-witness instructions that a trial court may give. The court may ask the jury to decide whether the witness is an accomplice as a matter of fact or can instruct the jury that the witness is an accomplice as a matter of law. *Zamora*, 411 S.W.3d at 510. The evidence in each case dictates the type of accomplice-witness instruction that needs to be given. *State v. Ambrose*, 487 S.W.3d 587, 594 (Tex. Crim. App. 2016).

A witness is an accomplice as a matter of law when 1) the witness has been charged with the same offense as the defendant or a lesser-included offense, 2) the

State charged the witness but dismissed the charge in exchange for the witness's testimony, or 3) the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was not an accomplice. *Ash v. State*, 533 S.W.3d 878, 886 (Tex. Crim. App. 2017). If the witness is an accomplice as a matter of law, the trial court must affirmatively instruct the jury that the witness is an accomplice and that his testimony must be corroborated. *Zamora*, 411 S.W.3d at 510.

If, on the other hand, the witness was never charged and the evidence regarding the witness's complicity is conflicting or inconclusive, the accomplice-witness instruction should ask the jury to decide whether the witness is an accomplice as a matter of fact; and if so, apply the corroboration requirement. *Id*.

A defendant cannot be convicted upon the uncorroborated testimony of an accomplice. TEX. CODE CRIM. PROC. ANN. art. 38.14. Therefore, an accomplice's testimony must be corroborated by non-accomplice evidence that tends to connect the accused to the offense. *Ambrose*, 487 S.W.3d at 593. "Such evidence may be either direct or circumstantial." *Id*. Moreover, the evidence standing alone need not be sufficient to establish guilt; it must merely connect the accused to the charged offense. *Id.*

Appellant argues, and the State concurs, that the charge should not have included an accomplice-as-a-matter of fact instruction because Villalobos was an accomplice as a matter of law. We agree. Villalobos's complicity was neither

conflicting nor inconclusive. The evidence showed that Villalobos knew the others were planning to kill Villatoro but he kept driving anyway. Therefore, Villalobos was an accomplice as a matter of law and the instruction is erroneous. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

Because appellant did not object to the charge, reversal follows only if the record demonstrates the error resulted in egregious harm. *See Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012); *Zamora*, 411 S.W.3d at 515 (stating an accomplice-witness instruction must be analyzed under *Almanza*). Under the egregious harm standard, the omission of an accomplice-witness instruction is generally harmless unless the non-accomplice evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron,* 86 S.W.3d at 632; *see also Vasquez v. State*, No. 05-15-00588-CR, 2016 WL 912178, at *5 (Tex. App.—Dallas Mar. 10, 2016 no. pet) (mem. op., not designated for publication). But if non-accomplice evidence connects the defendant to the offense, then the purpose of the instruction is fulfilled, and its omission is harmless. *Herron*, 86 S.W.3d at 632; *see also Garcia v. State*, 578 S.W.3d 106, 129–30 (Tex. App.—Beaumont 2019, pet. ref'd) (applying *Herron* standard to a jury charge in which the trial court gave an accomplice-as-a-matter-of-fact instruction when the defendant was entitled to accomplice-as-a-matter-of-law instruction).

Corroborating evidence from other sources tending to connect appellant to the offense was admitted during trial. Specifically, two witnesses testified that appellant told them he killed Villatoro, and appellant's cell phone records place him at the scene of the crime.

Carlos Mejia was the first witness who testified that appellant told him he killed Villatoro. Mejia runs a construction business and appellant and several of his friends, including a man known as "Mysterio" work for Mejia. Mejia knows that appellant, Mysterio, and some of his other employees are members of the 18th Street gang.

On the Friday before the murder, Mejia picked appellant up for work. Mysterio was there, as well as a man (later identified as Villatoro) that Mejia did not know. Mejia thought that Villatoro looked upset, but appellant told him not to worry about Villatoro "because one of these days we're going to kill him."

The following Monday, Mysterio looked "concerned." He told Mejia that "he had screwed up his life because he had gone to kill . . . [Villatoro]." Appellant and Mysterio then told Mejia that they "shot [Villatoro] with a .40 and a [sic] Uzi."

Jorge Velasco also testified that appellant told him he shot and killed Villatoro. Velasco is a member of the 18th Street gang. Velasco said that he and appellant were members of the same clique of the 18th Street gang and Villatoro was a member of a different clique. Before Villatoro was killed, the local leader of the gang called Velasco to discuss how Villatoro had violated gang rules by erasing a

gang tattoo. After Villatoro was killed, appellant called Velasco and told him they killed Villatoro. Appellant said that Villalobos, who was not a gang member, drove the vehicle and another gang member shot Villatoro. Villatoro ran. Then, appellant shot and killed Villatoro.

Dash-cam video from a witness who drove by the crime scene showed the time frame of the murder as between 5:00 and 6:30 p.m. Appellant's cell phone records placed him at the scene during that time frame. Detective Chad Prda explained how he mapped out the location of appellant's and Villatoro's phones on the day of the murder. At about 4:00 p.m., appellant's and Villatoro's phones were in the vicinity of the apartment complex where appellant and Mysterio lived. At around 5:50 p.m., Villatoro's phone began moving south, and at around 6:00 p.m. appellant's and Villatoro's phones were near each other in the vicinity of Post Oak Road near Hutchins.[1] The phones stayed in that area for the next fifteen to twenty minutes. After that, appellant's phone left the area.

Mejia's and Velasco's testimony, together with the cell phone records, tend to connect appellant to the offense. Therefore, the purpose of the accomplice-witness instruction was fulfilled, and the court's erroneous instruction was harmless. *Herron*, 86 S.W.3d at 632; *Garcia*, 578 S.W.3d at 130. We resolve appellant's first issue against him.

---

[1] Villatoro's body and car were discovered on Post Oak Road.

**B.    Sufficiency of the Evidence**

Appellant's second issue argues that the evidence is legally insufficient under *Jackson* because Villalobos's accomplice witness testimony was not sufficiently corroborated. This argument, however, conflates two standards: the *Jackson* legal-sufficiency standard, and the statutory corroboration standard.

The *Jackson* sufficiency standard involves reviewing all evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime, as defined by the hypothetically correct jury charge, beyond a reasonable doubt. *Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Whether an accomplice witness's testimony was corroborated is not relevant under *Jackson*, which considers all evidence and does not disregard accomplice testimony. *See McDuff v. State*, 939 S.W.2d 607, 613–14 (Tex. Crim. App. 1997) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

On the other hand, the corroboration standard is not derived from federal or state constitutional principles that define legal sufficiency standards. *Druery v. State*, 225 S.W.3d 491, 492 (Tex. Crim. App. 2007). Rather than challenging the sufficiency of the evidence to support the verdict, it measures the non-accomplice evidence that tends to connect the accused to the offense. *See Cannon v. State*, Nos. 05-13-01109-CR, 05-13-01110-CR, 2014 WL 3056171, at *5 (Tex. App.—Dallas Jul. 7, 2014, no pet.) (mem. op., not designated for publication).

We have concluded that there is sufficient non-accomplice evidence to connect appellant to the offense. Moreover, we consider all evidence—including the accomplice witness testimony—in our sufficiency review under *Jackson*. *See McDuff*, 939 S.W.2d at 614.

The legal sufficiency standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011). Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonably based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.*

As relevant here, a person commits the offense of engaging in organized criminal activity if "with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits . . . murder." TEX. PENAL CODE ANN. § 71.02(a)(1). A person commits murder if he 1) intentionally or knowingly causes the death of an individual or 2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. §§ 19.02(b)(1), (2).

The evidence showed that appellant was a member of a criminal street gang. A criminal street gang is "three or more persons having a common identifying sign

or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PENAL CODE ANN. § 71.01(d).

Eugenio Vela, a Homeland Security Special Agent, testified that the 18th Street gang is a transnational street gang with thousands of members. The gang's top leadership is now in El Salvador. The gang is involved in many types of crime, including "extortion, robberies, home invasions, dealing drugs [and] homicides." Members use specific hand signs to identify themselves and the gang uses symbols that appear in members' tattoos.

Vela testified that appellant was a member of the 18th Street gang and identified appellant in a photograph with other gang members "throwing" a gang sign. He also identified photographs of appellant's gang tattoos.

Velasco, Villalobos, and Mejia also testified that appellant was a gang member. Appellant admitted he was a gang member when he was in El Salvador.

Dr. Tracy Dyer, deputy chief medical examiner for Dallas County, performed the autopsy on Villatoro. Villatoro had been shot five times in the neck and head. While each gunshot wound on its own would "potentially" have been fatal, taken together, they "absolutely" were fatal and caused Villatoro's death.[2]

---

[2] Villatoro also had three gunshot wounds on his left hand. These wounds were consistent with Villatoro putting his hand in front of his face as he was being shot.

One of the bullets recovered from Villatoro's body and two of the cartridge cases from the scene were fired from a .40 Smith & Wesson.[3] Two other bullets recovered from Villatoro's body were of a different caliber and did not come from that gun.

As previously discussed, Mysterio and appellant told Mejia that they shot Villatoro with a .40 and an Uzi. Villalobos saw appellant shoot Villatoro and identified a photograph of appellant with the Uzi. Appellant's cell phone records also place him at the scene of the crime.

Appellant's critique of Mejia's and Velasco's credibility and alleged inconsistencies in the evidence is not persuasive. The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony and only the jury may resolve conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

Under these circumstances, a rational jury could have found all the elements of the charged offense beyond a reasonable doubt and the evidence is sufficient to support the conviction. Appellant's second issue is resolved against him.

---

[3] The .40 Smith & Wesson was recovered about two months after the murder when Villalobos and others were pulled over during a traffic stop.

### III. Conclusion

Having resolved all of appellant's issue against him, we affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
190463F.U05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GERALD JEFFERSON MUNOZ MONTANO, Appellant

No. 05-19-00463-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F18-00457-Y.
Opinion delivered by Justice Garcia. Justices Myers and Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 26, 2021