

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00532-CR

Daniel Cervantes **SALAZAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 181st Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR6992
Honorable Laura Parker, Judge Presiding

Opinion by:　Luz Elena D. Chapa, Justice

Sitting:　　Patricia O. Alvarez, Justice
　　　　　　Luz Elena D. Chapa, Justice
　　　　　　Irene Rios, Justice

Delivered and Filed: July 10, 2019

AFFIRMED

Daniel Salazar appeals his murder conviction. He argues the State withheld exculpatory evidence, the jury lacked sufficient evidence to reject his self-defense claim, and he was egregiously harmed by charge error. We affirm the trial court's judgment.

## BACKGROUND

Just after midnight on June 3, 2016, Salazar shot Miguel Moreno with a firearm outside of Little Joe's Icehouse in San Antonio. The shooting was recorded by a security camera. The video recording, which has no audio, shows Salazar, Moreno, and another bar patron Jesse Hernandez

outside of the bar on the front patio, next to the parking lot. Starting at 12:15 a.m., the video recording shows the three men having a conversation.

At 12:23 a.m., Moreno and Hernandez are then seen approaching the edge of the patio near the parking lot where Salazar was standing. Salazar starts to walk away toward the parking lot and abruptly turns around. Hernandez then backs away quickly, and Moreno steps in between Salazar and Hernandez. The video recording then shows Moreno falling to the ground, Salazar shooting a gun at Hernandez, and Salazar chasing Hernandez while continuing to shoot at him. Salazar thereafter returns to where Moreno was lying on the ground and shoots him in the head. Moreno ultimately dies from his gunshot wounds.

Salazar was indicted for murder, and the case proceeded to a jury trial. The trial court called the case and considered a discovery motion Salazar had filed. Salazar's discovery request sought all video recordings from the scene of the crime and his arrest.[1] The trial court noted, "I have in front of me a Motion for Discovery. Both parties have represented that they feel that the State has complied with the discovery requirements. Is that correct?" Salazar's trial counsel responded, "That is correct, Your Honor."

The jury heard testimony from numerous witnesses. The above-described video recording, photographs, and physical evidence also were admitted into evidence. The State's theory of the case was that Salazar and Moreno "didn't like each other" and there was "an ongoing problem" between them. Salazar testified in his defense. He explained he frequented Little Joe's Icehouse, his girlfriend works there, and her grandfather owns it. He stated that three days before the shooting, his friend J.D. Votion had asked Moreno's wife to dance, not knowing she was married,

---

[1] Specifically, the motion requested, "All photographs, videotapes, audiotapes, drawings, charts and diagrams made by the state or law enforcement agency with reference to this case, including, but not limited to those of the scene of the crime and the scene of Defendant's arrest."

and Moreno became upset. Salazar testified that on the night of the shooting, Moreno and Hernandez were at the bar speaking with another man, Robert Rivera. According to Salazar, Rivera threatened him using profane language. Salazar testified that as he was leaving the bar, he did not see Rivera and feared Rivera was lying in wait in the parking lot, so he stayed on the patio rather than going to his truck. He also stated he feared Moreno, Hernandez, and Rivera would "gang up" on him. Salazar testified Moreno had said he was in a gang and made a "gang sign" with his hand, and Salazar started shooting after Moreno and Hernandez threatened to kill him and advanced toward him.

After closing arguments, the trial court charged the jury on guilt–innocence. Tracking the indictment, the jury charge stated a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual," "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual," or "intentionally or knowingly commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, commits an act clearly dangerous to human life that causes the death of an individual." The charge also instructed, "Unlawful carrying of a weapon on a licensed premise and felon in possession of a firearm are felony offenses." The charge, which is quoted below, further instructed the jury on the issue of self-defense and on the circumstances giving rise to a requirement to retreat. The jury found Salazar guilty, and after the trial court imposed the thirty-year prison sentence the jury had assessed, Salazar timely appealed.

### FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

In his first issue, Salazar argues the State failed to disclose exculpatory evidence, specifically, several video recordings from other security cameras at Little Joe's Icehouse. Salazar did not raise this complaint in the trial court and his trial counsel represented the State had

complied with its discovery obligations. We overrule this issue. *See Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999) (holding *Brady* claim was procedurally defaulted absent a timely complaint in the trial court); *Gonzales v. State*, No. 04-17-00263-CR, 2018 WL 5621879, at *8 (Tex. App.—San Antonio Oct. 31, 2018, pet. ref'd) (mem. op., not designated for publication) ("A claim that the State's nondisclosure of evidence violated the Michael Morton Act must similarly be preserved . . . .").")."

## SELF-DEFENSE

In his second issue, Salazar argues the jury lacked sufficient evidence to reject his self-defense claim. Salazar does not challenge the sufficiency of the evidence regarding the essential elements of the offense of murder. He instead argues the State failed to present sufficient evidence from which a rational trier of fact could have found he did not act in self-defense.

In raising a claim of self-defense, the defendant initially must produce some evidence showing his use of force was justified. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). If this burden is satisfied, the State then bears the ultimate burden of persuasion to disprove the defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Thus, for a jury to convict a defendant of murder after he produces some evidence showing he used deadly force in self-defense, the State must persuade the jury beyond a reasonable doubt the defendant's use of deadly force was not justified. *See Zuliani*, 97 S.W.3d at 594. We must determine whether the evidence, when viewed in the light most favorable to the prosecution, would have enabled a rational trier of fact to find "against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

For self-defense, the use of deadly force is justified "when and to the degree the actor reasonably believes . . . is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE § 9.32(a)(2); *see Mays v. State*, 318

S.W.3d 368, 385 (Tex. Crim. App. 2010). "A 'reasonable belief' is 'a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.'" *Loun v. State*, 273 S.W.3d 406, 412 (Tex. App.—Texarkana 2008, no pet.) (quoting TEX. PENAL CODE § 1.07(a)(42)). "Self-defense . . . [is an issue] of fact for the jury to determine." *Miranda v. State*, 350 S.W.3d 141, 148 (Tex. App.—San Antonio 2011, no pet.).

Salazar argues the evidence shows Moreno and Hernandez were the first aggressors. Specifically, he cites to other witnesses' testimony showing Moreno and Hernandez were gang members, his testimony that Moreno threw gang signs and threatened to kill him, and his testimony that the two men advanced toward him consistent with their threat. Salazar argues his use of deadly force was justified because he reasonably believed shooting Moreno was immediately necessary to protect himself against Moreno and Hernandez. Assuming Salazar's testimony was some evidence showing he reasonably apprehended an attempted use of deadly force, the jury was shown the video recording numerous times during the trial.

The video recording shows that after he exits the bar, Salazar is, at first, sitting on a railing at one end of the front patio smoking a cigarette; Salazar is facing Moreno, while Moreno is facing the bar's front entrance; and Hernandez is on the phone on the other side of the patio. The three men are then seen talking as other patrons are coming and going from the bar. Approximately twenty seconds into the conversation, Salazar grabs an item in his right pocket, pulls it out slightly and gestures toward Moreno, and puts the item back into his pocket. Several times during the first five minutes of the conversation, Moreno forms a gun shape with his right hand and points at Salazar. Approximately five minutes into the conversation, a truck pulls up, the driver exits the truck and approaches Salazar, Salazar and the driver shake hands, and the driver walks into the bar. Approximately two and a half minutes later, Moreno and Hernandez are seen approaching Salazar on his end of the patio near the parking lot. Approximately thirty seconds later, Salazar

walks into the parking lot, and then turns around and starts to shoot. The video shows Salazar chasing and shooting at Hernandez, and then shooting Moreno in the head as he was lying on the ground.

Salazar's undisputed conduct as shown in the video recording—sitting outside smoking a cigarette, engaging in an extended conversation with Hernandez and Moreno as other patrons are coming and going from the bar, shaking hands with a patron who arrived, retreating into the parking lot before turning around, starting to shoot at Hernandez and Moreno and seeing Moreno falling to the ground, chasing Hernandez while shooting at him, and then shooting Moreno in the head as he was lying on the ground—is more than sufficient evidence for a rational jury to disbelieve Salazar's testimony and to find he did not reasonably believe deadly force was immediately necessary to protect himself against Hernandez and Moreno's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE § 9.32(a)(2); *Mays*, 318 S.W.3d at 385. We therefore overrule this issue. *See Valdez v. State*, No. 04-17-00164-CR, 2018 WL 2024631, at *2–3 (Tex. App.—San Antonio May 2, 2018, pet. ref'd) (mem. op., not designated for publication) (overruling a similar issue when a video recording showed the defendant shot the victim standing outside of defendant's house and then, after the victim was lying in the driveway, shooting the victim in the head). We overrule Salazar's second issue.

## JURY CHARGE ISSUES

In his third issue, Salazar raises numerous complaints about issues with the jury charge. He argues the trial court gave him insufficient time to review the proposed charge, the trial court incorrectly defined the elements of a felon in possession of a firearm on the issue of felony murder, and the trial court should not have instructed the jury on the duty to retreat.

## A. Insufficient Time to Review the Proposed Jury Charge

Throughout his brief, Salazar asserts the trial court failed to give him and trial counsel reasonable time to review the proposed charge in violation of articles 36.14 and 36.19 of the Texas Code of Criminal Procedure. Salazar's brief does not explain this assertion or cite to any part of the record. The State argues Salazar waived this issue due to inadequately briefing. We agree. *See* TEX. R. APP. P. 38.1(i). The record shows trial counsel received the proposed charge before lunchtime the day before the court charged the jury, and counsel stated "we have reviewed" the charge. Salazar also did not raise this complaint in the trial court or request more time to review the charge. *See id.* R. 33.1(a). Salazar has therefore waived this complaint.

## B. Alleged Errors in the Jury Charge

Salazar also challenges the substance of the jury charge; he contends the charge contains errors in stating the applicable law. "In resolving a challenge to the jury charge, we first determine whether error exists." *Torres v. State*, 560 S.W.3d 366, 372 (Tex. App.—San Antonio 2018, no pet.). If so, our standard of review for whether such an error is reversible turns on whether the error was objected to in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). When, as here, a defendant fails to object to the jury charge at trial, we will affirm the trial court's judgment unless we determine the charge error caused the appellant to suffer egregious harm. *Id.*

### 1. Felon in Possession of a Firearm

Consistent with the indictment, the jury charge included three alternative theories under which the jury could find Salazar guilty of murder. One of those theories was felony murder because Salazar was a felon in possession of a firearm. The jury charge stated:

> Our law provides that a person commits the offense of felon in possession of a firearm if the person has been convicted of a felony and possesses a firearm **after the fifth anniversary** of the person's release from confinement following conviction of the felony or the person's release from supervision under community

supervision, parole, or mandatory supervision, whichever date is later, at any location other than the premises where the person lives.

(emphasis added). Salazar contends error exists because an offense of being a felon in possession of a firearm can be committed only "before the fifth anniversary," not "after."

Section 46.04(a) of the Texas Penal Code provides:

> (a) A person who has been convicted of a felony commits an offense if he possesses a firearm:
> (1) after conviction and **before the fifth anniversary** of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; **or**
> (2) **after** the period described by Subdivision (1), at any location other than the premises at which the person lives.

TEX. PENAL CODE § 46.04(a) (emphasis added). Under section 46.04(a), an offense can be committed under either Subsection (1) "or" Subsection (2). *Id.* Subsection (1) provides an offense may be committed "before the fifth anniversary," but Subsection (2) provides an offense may be committed "after" such time, i.e. "after" the fifth anniversary. *See id.* The jury charge instructed the jury in accordance with Subsection (2), and therefore does not contain the error Salazar argues. *See id.*

### 2. Duty to Retreat

Salazar also argues the trial court erred by including an instruction on the duty to retreat in the self-defense portion of the charge. In the relevant part, the jury charge states:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force.
> In determining whether an actor reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

Salazar does not dispute that this instruction accurately states the law. Instead, he argues that under *Morales v. State*, 357 S.W.3d 1 (Tex. Crim. App. 2011), giving the jury any duty-to-retreat

instruction is always erroneous. The State disputes Salazar's reading of *Morales* and argues a duty-to-retreat instruction can be proper in some cases.

In *Morales*, the Court of Criminal Appeals held a general duty to retreat instruction is improper because the "no duty to retreat" provisions of the Penal Code "are not all-encompassing." *Id.* at 5. "By their language, they do not apply if the defendant provoked the person against whom force or deadly force was used or if the defendant was engaged in criminal activity at the time. But when these provisions do apply, the defendant has no duty to retreat." *Id.* "When these provisions do not apply, the failure to retreat may be considered in determining whether a defendant reasonably believed that his conduct was immediately necessary to defend himself or a third person. In such cases, the prosecutor may argue the failure to retreat as a factor in determining whether the defendant's conduct really was immediately necessary. Or if a fact issue is raised regarding the applicability of the provisions that specifically negate a duty to retreat, the prosecutor can argue that the facts do not satisfy the provisions and then argue the failure to retreat as a factor relevant to the defensive issue." *Id.* (footnote omitted). "But that does not mean that the trial court should submit a jury instruction regarding a general duty to retreat." *Id.* In *Morales*, the Court of Criminal Appeals held the trial court's submission of a jury instruction on a general duty to retreat was improper because the instruction contained "additional instructions, which did not conform to the statute." *Id.*

Here, Salazar does not argue the instruction failed to conform to the statute, but argues it should not have been given at all. Based on the evidence admitted at trial, the State sought to prove Salazar was engaging in illegal activity by possessing a firearm on the premises. Furthermore, applying *Morales*, "[o]ur sister courts have rejected similar arguments" that any instruction on a duty to retreat will "somehow mislead the jury into believing the defendant had a 'general duty to retreat.'" *Shannon v. State*, No. 08-13-00320-CR, 2015 WL 6394922, at *7 (Tex. App.—El Paso

Oct. 21, 2015, no pet.) (mem. op., not designated for publication).[2] We hold the trial court did not err merely by including a duty-to-retreat instruction, as Salazar argues.

Alternatively, we hold any error in submitting the jury instruction did not egregiously harm Salazar. The egregious harm standard is difficult to meet. *State v. Ambrose*, 457 S.W.3d 154, 160 (Tex. App.—San Antonio 2015), *aff'd*, 487 S.W.3d 587 (Tex. Crim. App. 2016). Egregious harm "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* In assessing the harm caused by failing to properly instruct the jury, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

Even if the inclusion of the duty-to-retreat instruction was erroneous, the jury charge as a whole did not repeat this error. *Cf. Guzman v. State*, No. 03-13-00131-CR, 2015 WL 2400238, at *8 (Tex. App.—Austin May 13, 2015, pet. ref'd) (holding repetition of error in charge four times weighed in favor of finding harm, but concluding there was not even "some harm"). The charge contained the statement, "In determining whether an actor reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat." This instruction was favorable to Salazar in that it instructed the jury it could not consider a failure to retreat in determining whether Salazar reasonably believed the use of deadly force was immediately necessary. The sole contested issue in this case was Salazar's self-defense claim, and

---

[2] The court in *Shannon* cited several authorities. *See* 2015 WL 6394922, at *7 (citing *Whitney v. State*, 396 S.W.3d 696, 701–03 (Tex. App.—Fort Worth 2013, pet. ref'd); *Russell v. State*, No. 03-12-00440-CR, 2014 WL 1572473, at *4 (Tex. App.—Austin April 18, 2014, pet. ref'd) (mem. op., not designated for publication)); *see also Gilbert v. State*, No. 06-18-00152-CR, 2019 WL 1461077, at *12 (Tex. App.—Texarkana Apr. 3, 2019, no pet.) (holding trial court properly submitted instruction on duty to retreat statute) (citing Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Criminal* CPJC 31.5 (2018)); *cf. Guzman v. State*, No. 03-13-00131-CR, 2015 WL 2400238, at *8 (Tex. App.—Austin May 13, 2015, pet. ref'd) (mem. op., not designated for publication) (holding language regarding a general duty to retreat, whether "a reasonable person in the defendant's situation would not have retreated," was not harmful).

the undisputed facts observed from the video recording, as described above, strongly discredited Salazar's self-defense claim. The video recording does not show Salazar failed to retreat, but instead began retreating into the parking lot initially, and then inexplicably changed course. Although both sides spent some time in closing arguments addressing this issue of the requirement to retreat, the inclusion of the instruction enabled Salazar to argue he was entitled to use deadly force without having to retreat. Even if the inclusion of this particular duty-to-retreat instruction was erroneous, we cannot say Salazar was egregiously harmed. *See Almanza*, 686 S.W.2d at 171; *cf. Guzman*, 2015 WL 2400238, at *8. We therefore overrule this issue.

## CONCLUSION

Having overruled all of Salazar's issues on appeal, we affirm the judgment of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH