In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00018-CR

JIROU ZACHERE JR., Appellant

V.

THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. F21-36363**

_____

## MEMORANDUM OPINION

A jury found Jirou Zachere Jr. ("Zachere" or "Appellant") guilty of the murder

of Carl[1] and assessed his punishment at seventy years of confinement. *See* Tex. Pen.

Code Ann. § 19.02(b)(1), (c). After reviewing the record and briefs of counsel, we

---

[1] We use pseudonyms for the name of the victims and their family members to protect their rights to privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

1

conclude that the trial court did not err by instructing the jury on parole law, refusing to include instructions on the lesser-included offense of manslaughter or "sudden passion," or failing to suppress the video of Appellant's recorded custodial interrogation. For the reasons set forth below, we affirm the judgment of the trial court.

## Background

We limit our discussion to the facts necessary for the disposition of the case. Carl and his girlfriend, Karen, went out on the evening of July 10, 2020, and returned to their apartment in Beaumont, Texas. Shortly after midnight, both were lying in bed when bullets were shot through the bedroom window striking Carl and Karen. Carl was hit in the shoulder area with the bullet traveling down his body, and Karen was hit in the foot. Carl died at the scene. The shooter left the scene and was not located that night.

Unbeknownst to Carl and Karen, Zachere's ex-girlfriend Amy, who was the mother of Zachere's child, was living in the apartment above Carl and Karen on the morning of the July 11, 2020 shooting. Zachere shot into Carl's apartment that morning because he thought Amy and her new boyfriend were living in the downstairs apartment at that time.

On October 25, 2020, the police were called again in reference to two individuals engaged in a shootout at the same apartment complex. The shooting

2

occurred near Carl's apartment where he was killed. Shell casings recovered on the evening of October 25 matched the casings collected from Carl's murder of July 11. When confronted by law enforcement, Zachere admitted he shot into Amy's apartment on October 25, and he told police he shot into the wrong apartment on July 11. Zachere said he mistakenly thought Amy was living in Carl's apartment. Zachere was arrested for Carl's murder, the aggravated assault of Karen, and for shooting Amy's boyfriend. This trial only involved Carl's murder, and during his opening statement, counsel for Zachere admitted that Zachere shot into Carl's apartment by mistake and did not intend to kill him.

## The Standard of Review

### The Motion to Suppress

When reviewing a trial court's ruling on a motion to suppress evidence we apply a bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and considers de novo the application of the law to the facts. *State v. Pettit*, 713 S.W.3d 834, 839 (Tex. Crim. App. 2025). We will defer to the trial court's findings unless they are unsupported by the record, and we will view the evidence in the light most favorable to the trial court's ruling. *Id.* We will reverse the trial court's ruling on a motion to suppress only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

3

The Jury Charge on Guilt-Innocence and Punishment

We review a claim of alleged jury charge error using a two-step process in which we examine (1) whether error existed in the charge, and (2) whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). Where, as to the failure to include a lesser-included charge on manslaughter, the defendant properly objected to the charge at trial, jury charge error requires reversal if we find "some harm" to his rights. *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The *Almanza* standard requires that an appellant show actual, and not theoretical, harm from jury instruction error. *Ngo*, 175 S.W.3d at 750; *see Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013); *Hanks v. State*, No. 09-23-00132-CR, 2024 Tex. App. LEXIS, at *34 (Tex. App.—Beaumont Sept. 11, 2024, pet. ref'd) (mem. op., not designated for publication).

The trial court's denial of a request for a lesser-included offense instruction in the jury charge is reviewed for an abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023). Whether a defendant is entitled to a lesser-included offense instruction involves a two-part test. *Id.* "First, we compare the statutory elements of the alleged lesser[-included] offense with the statutory elements of the greater offense and any descriptive averments in the indictment." *Id.*

4

If proof of the lesser-included offense is included within the proof of the greater offense, the first step is satisfied, and we then determine whether there is evidence from which a rational jury could find the defendant guilty of only the lesser offense. *Id.*

Regarding the parole law instruction, when the defendant fails to object or states in the trial court that he has no objection to the charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *See State v. Ambrose*, 487 S.W.3d 587, 595 (Tex. Crim. App. 2016) ("[U]npreserved jury-charge error does not require a new trial, even when the error is complained of in a motion for new trial, unless the error causes 'egregious harm.'").

## Analysis

### The Motion to Suppress

We first consider Appellant's third issue, in which he claims the trial court erred by failing to suppress his recorded statement. Approximately a week after Carl's murder, Detective Coffin was made aware that the 9mm pistol used in Carl's murder also fired the shells that were recovered from the crime scene on July 11. Detective Coffin had Zachere, who was jailed on a misdemeanor case, transported to the Beaumont Police Department (BPD) for a custodial interview.

Appellant's custodial interview was played for the jury at trial over objection. Appellant told officers that he had shot into the apartment and discarded the gun

5

directly after the shooting. He explained that he purchased the gun from Academy in Port Arthur in June. Appellant told officers that the gun was his and he had not let anyone else use it. He said he kept the gun on him all the time. Appellant told officers that he never went back to get the gun.

Appellant explained to the detectives that he had issues with Amy because she would not let him see his son. During the discussion, Appellant said he had anger impulse struggles. He admitted that Amy reported him several times. When Amy first moved, he did not know where she was living. Appellant said that by July, he knew she lived in the complex, and by October 25, he discovered the exact apartment where Amy and her boyfriend lived because he saw them go to the apartment one day.

Detective Coffin then brought up the July shooting at the complex. Appellant told him that Amy had left him, and he had wanted to see her, but she refused and he "got mad." He went to the apartment complex and heard something inside the apartment that he thought she lived in and shot into the apartment. Appellant told officers that he could not recall exactly when he learned that he had killed someone. He later learned that he knew the person; it was someone he had gone to school with. Appellant eventually admitted he hid the gun used in both shootings at his grandmother's house, and he told officers where to find the gun.

Detective Coffin testified that Appellant admitted what he did and where the gun was located. Appellant attempted to negotiate a sentence with the detective. Appellant admitted that he shot and killed Carl because he heard someone having sex through an apartment window and got mad because he thought it was Amy with her boyfriend. Appellant said he fired four shots into a window without really knowing who was behind it.

At the ruling on the motion to suppress, the trial court made these observations:

> Sometime between the 18-, 19-minute mark, a little bit before that, the detectives began talking about something else that -- from what they started off talking about it, seemed like, and that's when Mr. Zachere said he didn't want to talk anymore. They did not ask him any other questions. They told him, in fact, not to talk. They said -- Detective Coffin just gave a little more information to Mr. Zachere about what they were -- what he was wanting to talk about then left the room, gave him some time to visit -- I mean just sit -- not visit -- sit and think for a minute, came back in the room, again, told him not to talk unless he wanted to, asked him specifically if he wanted to, made him answer out loud in the affirmative that he did want to continue talking, and Mr. Zachere did, in fact, answer in the affirmative.

At the suppression hearing, counsel for Zachere argued that he was read his *Miranda* warnings approximately eighteen minutes before he was questioned about Carl's murder and after discussing another case in which Zachere was involved. Counsel's argument at trial was that Zachere should have been given the *Miranda* warnings again when the detective wanted to question him about Carl's murder. However, the State argued, and the trial court found, that re-reading the *Miranda*

7

warnings was not required under these circumstances. *See McNinch v. State*, No. 09-12-00281-CR, 2013 Tex. App. LEXIS 13362, at **14-15 (Tex. App.—Beaumont Oct. 30, 2013, no pet.) (mem. op., not designated for publication). Prior cases have addressed the situation in which a suspect is warned about his *Miranda* rights, a break in questioning occurs, and questioning resumes without the administration of new *Miranda* warnings. *See, e.g.*, *Bible v. State*, 162 S.W.3d 234, 241-42 (Tex. Crim. App. 2005); *Ex parte Bagley*, 509 S.W.2d 332, 337-38 (Tex. Crim. App. 1974); *Stallings v. State*, No. 09-09-00200-CR, 2010 Tex. App. LEXIS 4443, at **2-3 (Tex. App.—Beaumont June 9, 2010, pet. ref'd) (mem. op., not designated for publication). If the totality of the circumstances indicates that the second interview is essentially a continuation of the first, the *Miranda* warnings remain effective as to statements made during the second interview. *Dunn v. State*, 721 S.W.2d 325, 338 (Tex. Crim. App. 1986), *abrogated on other grounds by Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997) (holding "rewarning is not required where the interrogation is only a continuation about the same offense[]"); *Stallings*, 2010 Tex. App. LEXIS 4443, at **2-3. In making this determination, courts have considered the following factors: (1) the passage of time; (2) whether the second interrogation was conducted by a different person; (3) whether the interrogation related to a different offense; and (4) whether the officer reminded defendant of his earlier warnings. *See Bible*, 162 S.W.3d at 242.

In *Ex parte Bagley*, the defendant was taken from his jail cell, given *Miranda* warnings, questioned, and returned to his cell. *Ex parte Bagley*, 509 S.W.2d at 335-36. After questioning a co-defendant, Bagley was withdrawn from his cell, given a verbal *Miranda* warning and questioned again. *Id.* at 336. The Court of Criminal Appeals held that the second statement obtained from Bagley, hours after the first interrogation, was admissible based upon the *Miranda* warnings given to Bagley six to eight hours earlier. *Id.* at 337-38. For Zachere, similarly, 1) the passage of time was only eighteen minutes from receiving the *Miranda* warnings; 2) the interrogation regarding both offenses was conducted by the same officers; 3) though the incidents were on different dates, they both involved Zachere shooting at what he believed was Amy's apartment; and 4) the trial court pointed out that the interrogating officer reminded Zachere that he should only answer questions about Carl's shooting if he voluntarily wanted to—he was not being forced to answer. We hold the trial court's ruling on the motion to suppress was not arbitrary, unreasonable, or outside the zone of reasonable disagreement. *See Pettit*, 713 S.W.3d at 839.

On appeal, Zachere offers an alternative theory for suppression of his confession claiming that his mental state affected his knowing and voluntary waiver of his right to remain silent and refusal to answer questions about Carl's murder. However, this specific objection was not raised at the suppression hearing or at trial.

9

Zachere was required to preserve this complaint for appellate review by lodging a timely objection and stating the specific legal basis for the objection. *See Sartin v. State*, 680 S.W.3d 663, 667 (Tex. App.—Beaumont 2023, no pet.) (citing Tex. R. App. P. 33.1(a)(1)). When an issue has not been preserved for appeal, an appellate court should not address its merits. *Id.* (citing *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)). The Court of Criminal Appeals has explained that to preserve a complaint for appellate review, an objection must state the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. *Id.*; Tex. R. App. P. 33.1(a). The complaining party bears the responsibility of clearly conveying his particular complaint to the trial judge. *See Pena v. State*, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009). To avoid forfeiting a complaint on appeal, the party must "'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Id.* at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 908-09 (Tex. Crim. App. 1992)). "This gives the trial judge and the opposing party an opportunity to correct the error." *Id.*; *see also Mosley v. State*, 666 S.W.3d 670, 676 (Tex. Crim. App. 2023).

Almost all error, even constitutional error, must be preserved by objection or it is waived. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *Holland v. State*, 802 S.W.2d 696, 700-01 (Tex. Crim. App. 1991); *Briggs v. State*,

789 S.W.2d 918, 924 (Tex. Crim. App. 1990). A defendant fails to preserve error when the contention urged on appeal does not match the complaint made in the trial court. *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). In other words, an objection stating one legal basis for an objection at trial may not be used to support a different legal theory on appeal. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Zachere did not lodge an objection at trial that his confession was involuntary because he was not mentally competent when he made it and it is, thereby, waived. *See id.* We overrule issue three.

The Charge to the Jury on Guilt Innocence

At the guilt-innocence phase of the trial, Zachere requested the trial court to instruct the jury on the lesser-included offense of manslaughter. A person commits murder if he intentionally or knowingly causes the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(1). A person commits manslaughter if he recklessly causes the death of an individual. Tex. Pen. Code Ann. § 19.04(a).

The State concedes that manslaughter is a lesser-included offense of murder. *See Cavazos v. State*, 382 S.W.3d 377, 384-85 (Tex. Crim. App. 2012). Citing to *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) and *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993), the court in *Cavazos* wrote that "we must consider whether there was some evidence raised at trial from which a rational jury could acquit Appellant of the greater offense of murder and convict him of the

lesser-included offense of manslaughter[]" stating "[t]here must be some affirmative evidence that Appellant *did not intend to cause serious bodily injury* when he shot the victim, and must be some affirmative evidence from which a rational juror could infer that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur as a result of his conduct." *Cavazos*, 382 S.W.3d at 385 (emphasis added).

While Zachere testified in his own defense, saying that he was reckless when he shot into the apartment window where Carl was in bed, the trial court determined that his actions did not constitute evidence of recklessness. The trial judge noted that Zachere admitted on the stand that he believed someone was in the apartment when he shot into it, admitted he did not do it by accident, and that he intended to do it.

When the defendant properly objected to the charge at trial, jury charge error requires reversal if we find "some harm" to his rights. *Ngo*, 175 S.W.3d at 743 (citations omitted). The *Almanza* standard requires that an appellant show actual harm. *Id.* at 750. Our first inquiry is whether there is error in the charge given by the trial court. *Id.* at 743.

The indictment charged Zachere with "intentionally and knowingly" causing the death of Carl by shooting him with a firearm. "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the

12

result." Tex. Pen. Code Ann. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* "A person acts recklessly. . . with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Since the State concedes that manslaughter is a lesser-included offense of murder, we must decide whether there is some evidence from which the jury could have rationally acquitted Zachere of the greater offense of murder while convicting him of the lesser offense of manslaughter. *See Chavez*, 666 S.W.3d at 776. Amy testified that in February 2019, Zachere threatened to kill her because she was not with him and had allowed another man to be around his son. In May 2019, Zachere assaulted Amy in her front yard, broke her phone, and yanked her shirt off while tackling her to the ground. Later in 2019, Zachere broke her apartment door down

13

and ran off after Amy's new boyfriend pulled a gun on Zachere and told him to leave. By September 2020, Zachere had gone by her new apartment on several occasions recorded on her "ring" doorbell camera. On one occasion, Zachere punched her door and said, "I'll shoot this b*tch up, bring me my son." On another occasion he attempted to break in while nobody was home.

Zachere's aggressive behavior toward Amy and her new boyfriend resulted in him shooting into Carl's apartment on July 11, and Zachere admitted hearing people who sounded like they were having sex. Learning that it was the wrong apartment, Zachere located Amy's apartment sometime in September. Further evidence of intent to commit murder included the October 25 shooting of Amy's boyfriend in the parking lot of their apartment. Her boyfriend eventually died from complications from the shooting. Zachere's actions taken against Amy and her boyfriend serve to support the State's theory that Zachere acted intentionally and knowingly, with planning and measured intent, to cause the death of Amy and her boyfriend by shooting them. This evidence was offered to show Zachere's state of mind when he shot into the apartment where Carl lived because he thought Amy and her boyfriend lived there. Recounting the evidence of Zachere's actions, the trial court determined that there was no more than a scintilla of evidence to support the theory that Zachere was only acting recklessly, and not intentionally or knowingly, when he fired into Carl's apartment.

In his trial testimony and confession, Zachere said he was "frustrated, aggravated[]" but responded, when asked, "I don't know[]" why he fired the shot through the window that killed Carl. He said he had no one to talk to about his "problems." He said, "I ain't intentionally kill [Carl]." He went on to say, "I guess smoke too much marijuana had me paranoid, you know." He said he attended Wiley College, in Marshall, Texas, for two years majoring in physical education. He left the college and planned on changing his major to business management but "just got caught up in all this." He said after he left college, he started a job as a correctional officer and trained in Brazoria County during 2020.

Zachere testified that he was frustrated during 2020 in dealing with Amy because he wanted to see his child and got angry, punched her front door on one occasion, and damaged her ring doorbell camera on another. He said on the night he shot into Carl's apartment in July, "I was acting irrational, outrageous, drastic, not logically thinking what -- who is it or what may happen, even though I know you shoot a gun something bad can happen." He went on to say, when asked the reasons that he shot into the window of Carl's apartment, "I ain't have no intent on harming anybody[]" and "I just pulled the trigger out of frustration, sir." Zachere was prompted by his own attorney, through leading questions, to say his actions were reckless but he actually testified his actions were "senseless." His attorney then

15

corrected him to prompt him to say his "behavior" was "very reckless[]" that night to which he responded "[y]es, sir."

On cross-examination by the State, Zachere claimed he wasn't stalking Amy and he had no idea why he was outside of what he thought was her apartment at 1:00 a.m. Zachere admitted that he knew by July 11 that Amy lived at that apartment complex, in that particular building, but then he said he didn't know why he went there saying, "I didn't think nothing, sir." The State asked Zachere "[w]hat were you doing outside that window[,]" and Zachere stated, "I don't know, sir." When the State challenged Zachere that shooting through the window four times on purpose had to be intentional and not just reckless, Zachere said he didn't purposely shoot. However, Zachere admitted he intentionally shot in the direction where he heard the people in the apartment:

> Q. (Prosecutor) The gun went off on accident?
> A. (Zachere) No. I shot, but it wasn't intentional to hit anyone.
> Q. (Prosecutor) You shot into an apartment on purpose. You didn't aim up in the air. You didn't aim down at the ground. You shot into a window where you heard people, right?
> A. (Zachere) Yes, sir.
> . . .
> Q. (Prosecutor) No. My question: Did you pull the trigger on purpose?
> A. (Zachere) It wasn't no purpose behind it.
> Q. (Prosecutor) How did it go off?
> A. (Zachere) I pulled the trigger.
> Q. (Prosecutor) You pulled the gun, you pointed it through a window, and you pulled the trigger four times. You did that, correct?
> A. (Zachere) Yes, sir.

16

Zachere went on to admit that, in a prior incident, he broke Amy's door down but denied he went inside the apartment since he was only "at" the front door. He denied assaulting Amy as she had told the jury and said that it didn't happen and he didn't lay a hand on her. Under further cross-examination, Zachere admitted that he first lied to the police about the shooting at Carl's apartment in July until the investigator revealed that he was caught lying. He also continuously said he didn't go to Amy's apartment to "do violence" after he found the correct apartment where Amy lived. During the prior incident where Amy's ring camera was damaged, Zachere denied having a knife with him initially but then admitted he damaged the ring camera with a knife. He denied having a gun in his pocket at Amy's door in the incident prior to the second shooting even though he was heard on the ring camera saying "I'm gonna shoot up this b*tch." On cross-examination about that incident, he said he didn't intend to shoot anybody that day. The evidence indicates, based upon Zachere's own statements, Zachere earnestly believed Amy and her boyfriend were in Carl's apartment when he shot four times into the window. He admitted he intentionally shot into the window of the apartment, and he aimed toward the people he heard making noise under the mistaken idea that Amy and her boyfriend were having sexual relations. Zachere presented no credible evidence that he shot by accident or mistake, or that he was unsure whether people were in the apartment when he pointed the gun and shot four shots.

In *Cavazos*, the Court of Criminal Appeals concluded:

> There was no evidence directly germane to recklessness. Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend "I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots. The evidence here does not support a finding of recklessness and does not rise to [a] level that would convince a rational jury to find that if Appellant is guilty, he is guilty of only the lesser-included offense. Without additional evidence supporting a finding of recklessness, [Appellant]'s testimony alone is insufficient to require an instruction on the lesser-included offense of manslaughter. Because the facts did not raise manslaughter as a valid, rational alternative to the charged offense, Appellant was not entitled to the requested jury instruction.

*Cavazos*, 382 S.W.3d at 385-386. Following the reasoning of *Cavazos*, the trial court was within its discretion to determine that there was no more than a scintilla of evidence which would rise to the level that would convince a rational jury to find that, if Zachere is guilty, he is guilty of only the lesser-included offense of manslaughter. *See id.* By his own testimony and statements, Zachere admitted that he intended to go to Amy's apartment and intentionally fired four shots through the window in the direction that he heard people he believed were having sex. Bald-faced, self-serving statements such as, "I ain't have no intent on harming anybody[;]" it was "senseless[]" later corrected by his attorney to say "reckless[;]" "I just pulled the trigger out of frustration, sir[;]" "I didn't think nothing[;]" "I don't know[;]" and related statements are not evidence that Zachere could only be found guilty of manslaughter and not guilty of murder. *See id.* Just as the court found in

18

*Cavazos*, without additional evidence supporting a finding of recklessness, Zachere's testimony alone is insufficient to require an instruction on the lesser-included offense of manslaughter. *See id.* at 385. Because the facts did not raise manslaughter as a valid, rational alternative to the charged offense, Zachere was not entitled to the requested jury instruction. *See id.* at 385-86. We overrule Zachere's point on issue two.

The Charges to the Jury on Punishment

In issue one, Zachere complains the trial court erred by including the parole law instruction provided by the Code of Criminal Procedure for certain felony cases:

> The length of time for which a defendant is imprisoned may be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law might be applied to this defendant if [he is] sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.

> You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).

19

Appellant did not object to the punishment charge on parole law at trial. When there was no objection in the trial court below, we evaluate any error under *Almanza*'s "egregious harm" standard and related factors. *See Almanza*, 686 S.W.2d at 171. Under the first *Almanza* factor, the court reviews the punishment charge in its entirety to determine if there is error in the charge. *See Ngo*, 175 S.W.3d at 743. In a case upholding the constitutionality of the parole instruction in the jury charge, the Court of Criminal Appeals stated that "the over-all purpose of the instruction is to inform jurors of these concepts as a general proposition, but to prohibit the jury from using its notions of parole or 'good conduct time' in any calculus in assessing the appropriate punishment." *Luquis v. State*, 72 S.W.3d 355, 360 (Tex. Crim. App. 2002). The trial court followed the statutory language verbatim. Both our court and the Court of Criminal Appeals have previously rejected the proposition that the statutory parole instruction in the punishment charge is unconstitutional, and we decline to revisit the issue in this case. Since there was no error by placing the statutory instruction on parole in the punishment charge, no harm analysis is necessary. We overrule issue one.

In issue four, Zachere complains that he was entitled to an instruction to the jury during the punishment trial on the issue of "sudden passion." A defendant who presents some evidence of sudden passion, even if the evidence is weak, impeached, contradicted, or unbelievable, is entitled to an instruction on this mitigating

20

circumstance. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). However, in order to preserve charge error on a defensive issue, the defendant is required to object to the charge as presented or to request the instruction to which the defense believes it is entitled. *See Simpson v. State*, 548 S.W.3d 708, 710-11 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2005). When the defendant fails to object or states in the trial court that he has no objection to the charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *See Ambrose*, 487 S.W.3d at 595. To show egregious harm, Zachere must demonstrate harm that affected "'the very basis of the case,'" "'deprive[d] the defendant of a valuable right,'" or "'vitally affect[ed] a defensive theory.'" *Ngo*, 175 S.W.3d at 750 (citation omitted).

After a review of the record before us, we conclude that Zachere was not entitled to an instruction on "sudden passion." The evidence did not support an instruction under Tex. Penal Code Ann. section 19.02. Even his own testimony did not support his argument that he acted as a result of "sudden passion."

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.02(d). "'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the

21

mind incapable of cool reflection." *Id.* § 19.02(a)(1). "'[S]udden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the murder offense is reduced from a first-degree felony to a second-degree felony. *Id.* § 19.02(d).

The evidence at trial showed Zachere had been rejected by Amy in the months prior to this shooting. Zachere had been stalking her, following her from residence to residence over several months, trying to locate her, and he believed that he had found her apartment on the morning of July 11. He said he believed she was having sexual intercourse with her boyfriend because of what he heard when he was outside standing next to the window of Carl's apartment. While this may have aroused "passion" in him, the evidence shows that there was nothing sudden about it. The evidence indicates Zachere had months to reflect on his actions. To justify a jury instruction on sudden passion, the record must show the person acted without adequate time for "cool reflection" before the act of shooting. *See Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013).

The statute requires the provocation be "sudden" and not based upon some previous provocation (i.e., the break-up of the relationship or previous denial of

access to their child). *See id.* We cannot say the trial court erred in refusing to submit a "sudden passion" instruction during the punishment phase of the trial.

That said, even assuming without deciding that Zachere was entitled to a "sudden passion" instruction, viewing the evidence in light of the *Ngo* standard, we find there was no egregious harm because it did not affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *See Ngo*, 175 S.W.3d at 750. For all of the foregoing reasons, we overrule issue four.

## CONCLUSION

Having overruled all of Zachere's issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on December 29, 2025
Opinion Delivered January 7, 2026
Do Not Publish

Before Johnson, Wright and Chambers, JJ.