

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00166-CR

---

MELCHOR MAGDALENO-GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 33552C, Honorable John Board, Sitting by Assignment

---

March 16, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Melchor Magdaleno-Garcia, appeals from his convictions for twenty-five counts of sexual assault of a child, sexual assault, and prohibited sexual conduct involving his three stepdaughters: "Amy," "Dana," and "Nancy."[1]  The jury returned guilty verdicts on all counts and assessed the maximum sentence for each offense, resulting in seven

---

[1] We use pseudonyms to protect the identities of the victims.

consecutive life sentences, several concurrent life sentences, and several concurrent twenty-year sentences.

Appellant raises five issues. Four challenge the sufficiency of the evidence, arguing that the complainants' testimony was too general to permit unanimous verdicts on discrete offenses. The fifth contends the trial court erred by failing to sua sponte instruct the jury on double jeopardy. After a painstaking review of the record, we affirm.

## BACKGROUND

Appellant lived with the complainants' mother and her three daughters, Amy, Dana, and Nancy. Their household moved from California to North Carolina and eventually to Amarillo, Texas, in April 2019. Appellant considered himself "married" to each of the girls and to their mother. He impregnated Dana while the family lived in California; she gave birth after they moved to North Carolina.

Once the family settled in Amarillo, Appellant subjected the household to a pattern of repeated sexual abuse. All three complainants testified that Appellant would decide on any given day which of the sisters or their mother would have sex with him. Nancy, who was fourteen when the family arrived in Amarillo, testified that Appellant had sex with her at least once or twice a week, and sometimes multiple times a day, with the only interruptions occurring when he traveled for work. Amy described sexual intercourse with Appellant hundreds of times in the Amarillo house. Dana testified that the abuse continued in Amarillo, though Appellant denied any sexual relationship with her after the move. The abuse ended in April 2021, when Nancy reconnected with a maternal uncle who helped the family escape.

2

Appellant testified at trial. He admitted to frequent sexual intercourse with Nancy (between thirteen and seventeen incidents) and with Amy (at least twenty incidents). He denied that any of the contact constituted "rape" and denied much contact with Dana.

A grand jury indicted Appellant for thirty-three offenses encompassing sexual assault of a child, sexual assault, and prohibited sexual conduct against the three women. The State abandoned four counts before trial and renumbered what remained. At trial, the State abandoned four more counts based on the complainants' testimony. The jury found Appellant guilty of the remaining twenty-five counts. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

To support a conviction for sexual assault, the State must prove beyond a reasonable doubt that Appellant intentionally or knowingly caused the penetration of the anus or sexual organ of another person by any means, without that person's consent, caused the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent, or caused the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. TEX. PENAL CODE § 22.011(a)(1)(A)–(C).

The offenses become a first-degree felony if the complainant was "a person with whom the actor was prohibited from engaging in sexual intercourse or deviate sexual intercourse under [§] 25.02." *Id.* § 22.011(f)(1)(B). Section 25.02 prohibits sexual intercourse and deviate sexual intercourse between a person and his current or former stepchild. *Id.* § 25.02(a)(2); *see also id.* § 25.02(b) (defining sexual intercourse and deviate sexual intercourse).

Before discussing the evidence supporting each conviction, we address the analytical framework applicable to Appellant's first four issues. His briefing conflates two distinct areas of law.

Appellant labels each issue as a challenge to the sufficiency of the evidence and requests acquittals. Yet he does not challenge the sufficiency of evidence to prove any particular element of any offense. Rather, his complaint is that the complainants "testified to tens and potentially hundreds of instances of sexual assault," rendering it impossible for the jury to unanimously agree on a specific act for each count.

In essence, Appellant attempts to present an unpreserved unanimity argument wearing sufficiency clothing. The concern Appellant identifies—that the jury could not have unanimously agreed on a single discrete act for each count—is a jury charge issue, not an evidentiary one. But Appellant does not frame his complaint as charge error, does not argue that the unanimity instruction was inadequate, and does not request a new trial. He seeks acquittals. The distinction matters because unanimity and sufficiency are governed by separate bodies of law, analyzed under different standards, and remedied in fundamentally different ways.

Texas law requires that a jury reach a unanimous verdict about the specific crime the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). When the State presents evidence that the defendant committed the charged offense on multiple separate occasions, the potential for non-unanimity arises. *Id.* at 772. To address this risk, a defendant may demand that the State elect a specific criminal act upon which it relies for conviction. *Id.* at 775. A unanimity complaint is reviewed as

4

charge error under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); the remedy for harmful error is a new trial, not an acquittal. *Cosio*, 353 S.W.3d at 776–77. Here, Appellant exercised the option not to demand an election.

A challenge to the sufficiency of the evidence, by contrast, asks whether the evidence, viewed in the light most favorable to the verdict, would permit a rational juror to find every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Sufficiency review does not rest on how the jury was instructed; the elements are measured against the hypothetically correct jury charge. *Walker v. State*, 594 S.W.3d 330, 335–36 (Tex. Crim. App. 2020). And unlike a unanimity violation, the remedy for insufficient evidence is acquittal.

Appellant's complaint is not about the evidence supporting the number of times he is alleged to have sexually abused his stepdaughters. Instead, he highlights the volume to argue the jury may not have agreed on which specific acts support which counts. That may present a unanimity complaint, but it is not what Appellant preserved.[2] We therefore review the evidence for sufficiency by asking whether the evidence, viewed favorably to the verdict, establishes the defendant committed the charged offense on at least as many separate occasions as there are convictions.

---

[2] Appellant's proposed argument, if accepted, would render the unanimity instruction meaningless. A defendant could request the instruction at trial and still argue on appeal that we cannot verify whether each juror subjectively assigned the same act to the same count. The result would be perverse: the more offenses a defendant commits, the harder it becomes to convict him of any.

5

The Court of Criminal Appeals addressed this standard in *Klein v. State*,[3] a case presenting similar repeated-conduct evidence as at issue here. The defendant was charged with eight counts of aggravated sexual assault, alleging he assaulted his daughter twice on each of four separate occasions. The complainant did not testify to specific dates. Instead, the evidence showed appellant touched the complainant "most nights" or "many times" when the complainant's mother was at dance class on Monday nights during a six-to-eight-week period. *Id.* at 300–01, 303. The court of appeals held the evidence legally insufficient to support six of the eight counts because the record was "void of any specific evidence of separate incidents constituting commission of additional offenses." *Id.* at 301.

The Court of Criminal Appeals disagreed. It held that when a victim describes the manner in which the defendant sexually assaulted her and states that the conduct occurred numerous times during a specific period, each incident is established with equal specificity. *Id.* at 303; *see also Dixon v. State*, 201 S.W.3d 731, 734 (Tex. Crim. App. 2006). It is unnecessary for the State to prove exact dates or individually distinguish one incident from another. *Klein*, 273 S.W.3d at 303. What matters is whether the evidence, viewed in the light most favorable to the verdict, permits a rational jury to find that the defendant committed the charged conduct on at least as many separate occasions as there are convictions. *Id.; see also Ex parte Pruitt*, 233 S.W.3d 338, 340–41 (Tex. Crim. App. 2007) (holding that testimony defendant penetrated victim's sexual organ "at least once a month" over a two-year span sufficiently described each incident of penetration

---

[3] 273 S.W.3d 297, 299 (Tex. Crim. App. 2008).

6

during that period).  In upholding *Klein's* conviction, the Court emphasized that testimony of the weekly dance class supplied sufficient specificity to support multiple convictions, because the time period and frequency, taken together, exceeded the number of charged offenses.  273 S.W.3d at 303.

Instead of discussing *Klein*, Appellant's principal brief relies heavily on *Griffith v. State*, 2019 Tex. Crim. App. Unpublished LEXIS 188 (Tex. Crim. App. 2019) (not designated for publication.  But *Griffith* addressed a materially different issue.  There, the appellant was convicted of *continuous* sexual abuse of a child, which elementally requires proof of two or more acts of sexual abuse occurring before the complainant's fourteenth birthday.  *Id.* at 13–15; *see* TEX. PENAL CODE § 21.02(b).  The *Griffith* Court found the testimony too vague to establish the timing of the second act relative to that birthday. *Griffith*, 2019 Tex. Crim. App. Unpublished LEXIS, at *13–15.  Here, Appellant was not charged with continuous abuse and does not raise a similar complaint.  Thus, *Griffith* is inapposite.

Because Appellant raised only sufficiency claims and requested only acquittals, we analyze his first four issues under the sufficiency framework as guided by *Klein*.  We consider all the evidence and reasonable inferences therefrom in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).  We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony.  *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

7

When an offense is alleged to have occurred "on or about" a certain date, the State may prove that an offense was committed on a date other than the one alleged, so long as the date proven is anterior to the presentment of the indictment and not barred by limitation. *Mireles v. State*, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995). This principle has added force in prosecutions involving child victims, who often cannot recall specific incidents with precision. *See Perez v. State*, 689 S.W.3d 369, 374 (Tex. Crim. App. 2024). Moreover, a conviction for sexual assault of a child is supportable on the uncorroborated testimony of the complainant alone. *See* TEX. CODE CRIM. PROC. art. 38.07. With these principles in mind, we turn to the evidence supporting each group of convictions.

## A. Offenses Against Nancy

The jury convicted Appellant of nine offenses involving Nancy: eight for penile-to-vaginal contact (Counts 1, 2, 7, 8, 9, 10, 11, and 12) and one for oral contact (Count 13). To support these convictions, the State was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly caused the penetration of Nancy's sexual organ by any means or caused the penetration of Nancy's mouth by Appellant's sexual organ. *See* TEX. PENAL CODE § 22.011(a)(2)(A), (B).[4]

Nancy was born on April 6, 2004. The family moved to Amarillo in April 2019, when Nancy was fourteen. The family escaped in April 2021.

---

[4] Appellant does not contest the evidence that Nancy was his stepdaughter, a fact relevant to the enhancement provision. *See* TEX. PENAL CODE §§ 22.011(f)(1)(B), 25.02(a)(2).

Nancy testified that while the family lived in Amarillo, Appellant would have sexual intercourse with her once or twice a week, sometimes multiple times a day. The only interruptions occurred when Appellant traveled for work. She described Appellant positioning himself between her legs and hovering over her, and intercourse occurring with her on all fours and Appellant behind her. These positions are anatomically specific to penile-to-vaginal intercourse.

The State also asked Nancy whether Appellant's penis contacted her vagina on some of the dates alleged in the indictment. Her responses varied. For some dates, she answered with an unqualified yes. For others, she confirmed the conduct occurred but hedged on precise timing, often because she could not recall exactly when Appellant was traveling. When the State anchored its questions to events Nancy could remember, such as Appellant's trips to Oregon and Del Rio and her birthday, she confirmed sexual contact during each period. Nancy confirmed the pattern that intercourse occurred whenever Appellant was home, with the only interruptions being when he traveled. Nancy confirmed that each of the dates the State identified involved penile-to-vaginal intercourse.

Nancy's occasional hedging reflected uncertainty about dates, not about whether the abuse occurred. That distinction matters. The State was not required to prove the exact dates alleged. Under the "on or about" language, it needed only to prove that the conduct occurred before the presentment of the indictment and within the limitations period. *See Mireles*, 901 S.W.2d at 459. And under *Klein*, exact dates are not required at all; the evidence need only show that the offense occurred at least as many times as there are convictions. Nancy's responses, even where hedged as to timing, satisfy that standard.

9

She also identified at least seven specific timeframes when sexual contact occurred; the eighth is easily inferable from the pattern. Appellant also corroborated her account, admitting to intercourse in positions consistent only with penile-to-vaginal contact between thirteen and seventeen times, more than the eight instances the State was required to prove. Consistent with *Klein*, the evidence is sufficient. *See* 273 S.W.3d at 302–03.

Count 13 required proof that Appellant caused his sexual organ to contact Nancy's mouth. Nancy testified that on at least two instances Appellant told her to perform oral sex on him, that she complied, and that her mouth contacted his penis. She confirmed this occurred at least once in Randall County. The evidence is therefore sufficient.

We overrule Appellant's first and third issues as they relate to Nancy.

**B. Offenses Against Dana**

The jury convicted Appellant of five offenses involving Dana: four for penile-to-vaginal contact (Counts 3, 15, 16, and 19) and one for oral contact (Count 20). We find the evidence sufficient as to all counts.

Appellant and Dana both testified that the two were "married." When living in California, Appellant impregnated Dana; she delivered the child after the family moved to North Carolina. Although Appellant denied any sexual relationship with Dana once the family moved to Amarillo, Dana testified that it continued.[5]

---

[5] The jury, of course, was free to credit Dana's testimony over Appellant's denial. *See Winfrey*, 393 S.W.3d at 768.

The State's questions to Dana followed the same chronological, date-specific approach used with Nancy. Dana testified that Appellant placed his penis inside her vagina "[q]uite a few times" while the family lived in Amarillo. When asked about specific dates, Dana answered affirmatively for four; she confirmed sexual contact around May 2019, February 2020, May 2020, and February 2021. The four surviving penile-to-vaginal counts correlate to these specific dates.

Dana could not recall assaults occurring on certain other dates; she denied one occurred in August 2020. The State abandoned those counts at trial.

As with Nancy, some of Dana's confirming responses reflect uncertainty about precise dates rather than about whether the conduct occurred. Dana's hedging was temporal, not substantive. She was not uncertain of whether Appellant had sex with her during the relevant periods. When the State gave Dana the opportunity to clarify, she confirmed that the dates she agreed to were ones she was "sure happened." Again, the State was not required to prove that the offenses occurred on the exact dates alleged because they occurred before the indictment and within the limitations period. *See Mireles*, 901 S.W.2d at 459. And under *Klein*, the evidence shows the offenses occurred at least as many times as there are convictions. 273 S.W.3d at 302–03.

As to oral contact, Dana testified that the sexual assaults were "[m]ainly penis to vagina" but that "[s]ometimes he would perform oral." She clarified what she meant: "He would have me lay down on my back and he would put his mouth on my vagina." The State asked: "Was there at least one time the entire time that you lived in Amarillo that he put his mouth on your vagina?" Dana answered "Yes." Dana's testimony that Appellant

11

"sometimes" performed oral sex over a period of nearly two years they lived in Amarillo, combined with her confirmation that it occurred at least once, is sufficient to support one oral-contact conviction. The evidence sufficiently supports the conviction alleged in Count 20.

We overrule Appellant's second and fourth issues as they relate to Dana.

**C. Offenses Against Amy**

The jury convicted Appellant of eleven offenses involving Amy: eight for penile-to-vaginal contact (Counts 5, 6, and 21–26), one for penetration of Amy's mouth by Appellant's sexual organ (Count 27), one for contact of Appellant's mouth with Amy's sexual organ (Count 28), and one for penetration of Amy's anus by Appellant's sexual organ (Count 29). We find the evidence sufficient as to all eleven counts.

Amy testified that the sexual abuse began when the family lived in California and continued after they moved to Amarillo. She described extraordinarily frequent intercourse in the Amarillo house: "more than thirty times" in the living room, "[p]robably" in the hundreds in Appellant's bedroom, and "[m]aybe more than [fifty]" in the bathroom. She recounted specific incidents, including Appellant making her wait on his bed undressed and on all fours for several minutes before intercourse. She also described an incident in March 2021 when her birth control was removed and Appellant expressed his intention to get her pregnant; this evidences the two in a sexual relationship in Randall County within weeks of the final charged date.

The State's questioning to Amy followed the same date-specific approach it used with Nancy and Dana, but Amy's responses were the most direct of the three

complainants. She answered "Yes" to every date without qualification or hesitation, confirming penile-to-vaginal intercourse on each of the eight charged dates. For each, the State confirmed the conduct occurred in Randall County, and Amy agreed. Unlike Nancy and Dana, whose responses to certain dates were hedged with phrases like "most likely" or "I believe so," none of Amy's answers were qualified, conditional, or uncertain. A video recording of one incident—State's Exhibit 32, filmed May 4, 2019—was admitted into evidence, providing independent corroboration of the earliest charged offense.

Amy's testimony alone would be sufficient to support each of these convictions. Her unqualified, affirmative responses to every date-specific question anchor each count to the evidence. Appellant's admissions further corroborate her account of penile-to-vaginal intercourse; he acknowledged having sexual intercourse with Amy "quite a bit" in Texas and agreed with the State that it occurred at least twenty times.

As to oral contact, Amy testified that Appellant put his penis in her mouth on multiple occasions during the relevant period. When asked how many times her mouth contacted his penis while she lived in Randall County, she answered: "I'm not sure, but it was a lot." She explained that it happened more frequently before she was placed on birth control, because afterward "he was finishing inside of you instead of making you use your mouth." She specifically confirmed that Appellant penetrated her mouth with his sexual organ on or about October 2019 in Randall County.[6]

---

[6] Appellant denied oral and anal contact with Amy, but the jury was the sole judge of credibility and was entitled to credit Amy's testimony over his denials. *See Winfrey*, 393 S.W.3d at 768.

Amy also testified that Appellant put his mouth on her vagina. She described a specific incident: "When he came home from New York he told me that that's what he wanted to do. He said he wanted to reciprocate, be a good husband, so that's what he did." She confirmed that this occurred on or about November 2019 in Randall County.

As to anal contact, Amy testified that Appellant put his penis in her "butt" during the relevant time period. She described the pattern: "It would either be just that occurring or it would be vaginal sex first and then he would want to put it in my—in my butt." She confirmed that this occurred in Randall County and specifically on or about December 2019.

The evidence is sufficient to support all eleven convictions. We overrule Appellant's second and fourth issues as they relate to Amy.

## CHARGE ERROR

By his fifth issue, Appellant contends that the trial court erred by failing to sua sponte instruct the jury on double jeopardy.

Both the United States Constitution and the Texas Constitution protect individuals from multiple punishments for the same offense. *Phillips v. State*, 787 S.W.2d 391, 393 (Tex. Crim. App. 1990). The prohibition encompasses three protections: against a second prosecution after acquittal, against a second prosecution after conviction, and against multiple punishments for the same offense. *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008); *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). However, multiple discrete assaults against the same victim do not comprise a single offense; a defendant who commits separate acts of sexual abuse over a period of time is

14

liable for separate prosecution and punishment for each act. *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992); *De Los Santos v. State*, 219 S.W.3d 71, 77 (Tex. App.— San Antonio 2006, no pet.).

A trial court must instruct the jury on the law applicable to the case. *See* TEX. CODE CRIM. PROC. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). We review jury charge error in two steps: first, we determine whether error exists; then we evaluate whether sufficient harm resulted to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). Because Appellant did not object to the charge at trial, we reverse only upon a finding of egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Egregious harm exists when the error "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016). The harm must be actual, not theoretical. *Id.*

Assuming without deciding that the trial court erred by failing to sua sponte instruct the jury on double jeopardy, Appellant cannot demonstrate egregious harm. Appellant does not identify an actual double jeopardy violation—that is, he does not point to any two counts that punish the same act. His argument is the same one he advances in his first four issues: because the complainants testified to numerous sexual assaults, it was theoretically possible for the jury to have convicted him on more than one count for a single underlying incident. But the possibility of overlapping convictions is not evidence that overlapping convictions occurred. *See id.* at 598.

15

Moreover, our count-by-count review of the evidence in addressing Appellant's first four issues demonstrates why the alleged harm is theoretical rather than actual. For virtually every conviction, the record reveals specific testimony tying that count to a discrete act of sexual contact, differentiated by complainant, type of contact, and date. The State asked each complainant whether the charged conduct occurred on or about the date alleged in the indictment, and each affirmed count rests on the complainant's affirmative response to a particular date-specific question. Those convictions are thus individually anchored to distinct testimony, and no two affirmed counts rest on the same testimonial foundation. On this record, Appellant's concern that the jury might have convicted him twice for the same act finds no support in the evidence; it is speculation, and speculation does not satisfy the egregious harm standard.

Appellant's fifth issue is overruled.

## CONCLUSION

We affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

16